UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON WAYNE MAXWELL, Petitioner, v. GEORGE A. NEOTTI, Warden, Respondent. | Case No. 09cv2660-L (BLM) **REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO DISMISS FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

This Report and Recommendation is submitted to United States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On January 12, 2010, Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a First Amended Petition for Writ of Habeas Corpus. Doc. No. 9 ("FAP"). Petitioner challenges a decision by the prison's senior disciplinary hearing officer finding him guilty of refusing a direct order. FAP at 6; Pet'r Mem. P. & A. Supp. FAP ("Pet'r Mem.") at 3. Petitioner seeks an order reversing the guilty finding, dismissing the disciplinary charges, and expunging the Rules Violation Report underlying the disciplinary conviction from his prison file. Pet'r Mem. at 13. On April 8, 2010, Respondent moved to dismiss the FAP. Doc. No. 15 ("Mot. to Dismiss"). Petitioner did not file an opposition to the motion to dismiss by the deadline set by this Court and has not sought an extension of time in which to do so.

This Court has considered the above documents as well as the record as a whole. Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's First

Amended Petition for Writ of Habeas Corpus be **DISMISSED**.

## FACTUAL AND PROCEDURAL BACKGROUND

In his well-written petition, Petitioner challenges a disciplinary conviction stemming from an incident that occurred on May 6, 2008. Petitioner explains that he has been classified as a "Sensitive Needs" ("SNY") inmate since August of 2005, which means that he is supposed to be physically segregated from all non-SNY general population inmates. Pet'r Mem. at 1. Despite this status, correctional staff attempted to house a general population inmate with him on May 6, 2008. Id. at 1-2. When the officer arrived with the potential cell mate, Petitioner asked to be placed in a holding cage next to the potential cell mate so that he could ascertain from this individual whether or not he also was a SNY inmate and, if not, whether he minded being housed with one. Id. at 2. Petitioner explains that he needed to know the answers to these questions in order to ensure his own safety because general population prisoners have unofficial "standing orders" or a "responsibility" to assault SNY inmates when given the opportunity. Id. If they fail to do so, they too may become targets. Id. According to Petitioner, correctional officers are well aware of this unofficial prison yard policy. Id. Petitioner stresses that at no time did he refuse to accept this individual as a cell mate; he simply asked to speak with him first. Id.

The correctional officer allegedly denied Petitioner the opportunity to speak with the other inmate, so Petitioner asked to be moved to administrative segregation due to his concern for his own safety. Id. at 3. Though a correctional officer told Petitioner he would be moved to administrative segregation, officers instead placed the potential cell mate in an empty cell elsewhere in the housing unit. Id. at 3, 7. Petitioner did not hear anything else about the incident until about a week later when he received a Rules Violation Report ("RVR") charging him with refusing to obey a direct order. Id. at 3.

At the subsequent disciplinary hearing, Petitioner was found guilty of the charge and assessed a loss of thirty days of good time credits[1]. Id. at 3 and Ex. 4[2] (a copy of the RVR).

---

[1] "Good time credit," as defined by 18 U.S.C. § 3624(b), is "[c]redit toward service of sentence for satisfactory behavior." Tablada v. Thomas, 533 F.3d 800, 803 (9th Cir. 2008) (quoting 18 U.S.C. § 3624(b)). Such credit may be awarded as follows:

Petitioner thereafter appealed the disciplinary conviction through the prison's administrative appeal system. Id. at 3; see also Lodgment 2. His appeal was denied at the Director's Level on January 28, 2009. Lodgment 2.

On March 2, 2009, Petitioner sought collateral review of his disciplinary conviction in a California superior court. Lodgment 3. The superior court denied his petition on March 23, 2009. Lodgment 4. Petitioner then filed a habeas petition in the California Court of Appeal, Third District, which that court denied on June 4, 2009. Lodgments 5 & 7. On July 9, 2009, Petitioner filed a habeas petition in the California Supreme Court. Lodgment 6. The petition was summarily denied without citation of authority on August 12, 2009. Lodgment 8; Pet'r Mem., Ex. 3.

On November 16, 2009, Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of California. Doc. No. 1. The case subsequently was transferred to this district and then dismissed with leave to amend. Doc. Nos. 4 & 8. On January 12, 2010, Petitioner filed the FAP presently being considered by the Court. Doc. No. 9. Therein, Petitioner alleges that the correctional officers who attempted to house Petitioner with a general population inmate violated the Eighth Amendment by abdicating their duty to protect him from violence at the hands of other inmates. Pet'r Mem. at 5-6 (citing Farmer v. Brennan, 511 U.S. 825, 832-33, 845 (1994)). Petitioner also alleges a Fourteenth Amendment violation, explaining that this Constitutional amendment ensures the right to be free from unjustified intrusions on an inmate's personal security. Id. at 6 (citing Ingraham v. Wright, 430 U.S. 651,

---

> (1) ... a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1).

[2] Petitioner did not number his exhibits, but he did provide a cover page for each exhibit, so this Court will refer to them sequentially, with each cover page denoting the start of a new exhibit.

673 (1977)). Citing the California Constitution and California Code of Regulations, tit. 15, § 3271, Petitioner argues that California law also protects inmates from harm. Id.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

## DISCUSSION

Respondent moves to dismiss the FAP on two grounds. First, Respondent contends that the FAP fails to state a federal question cognizable on habeas review because Petitioner does not challenge the legality or duration of his confinement. Mot. to Dismiss at 2-4. Second, to the extent Petitioner contends the California Department of Corrections ("CDCR") violated state law and failed to follow its own policies and procedures, Respondent submits that Petitioner also has failed to present a federal question. Id. at 2, 4-5. As previously noted, Petitioner has not opposed the motion or otherwise responded to these allegations.

### A. The FAP is Cognizable on Habeas Review

Respondent argues that the FAP is not cognizable on federal habeas review because Petitioner's good time credits (for RVR, Log Number EOP-08-05-020) have been fully restored and Petitioner, therefore, is not challenging the legality or duration of his confinement. Id. at 2-4 (citing Lodgment 9 (Chronological History at 1a (entry date 09-05-08, indicating Behavioral Credit Restoration (BCR) on 8-20-08 of 30 days for Rules Violation Report, Log No. 08-05-020)) and Lodgment 10 (Legal Status Summary at 2 (indicating 30 days of BCR on 08-20-08 for Rules Violation Report, Log No. 08-05-020))). Petitioner does not dispute Respondent's assertion that his credits have been restored nor does he list restoration of good time credits as part of the remedy he seeks by way of his FAP. See Pet'r Mem. at 13. Instead, Petitioner requests reversal of the guilty conviction, dismissal of the charges, and expungement of the RVR from his prison

record. See id. Moreover, Petitioner attached a classification hearing report to his FAP, which indicates "Committee acts to restore up to 30 days credit loss for RVR dated 5/6/08, log #EOP-08-05-020." Pet'r Mem., Ex. 5 at 50[3]. As such, it appears Respondent is correct that Petitioner no longer suffers from a deficit of good time credits as a result of this disciplinary conviction. Under these circumstances, Respondent submits that the action must be brought as a civil rights action. Id. at 4.

Federal courts have jurisdiction to consider a habeas petition only if the petitioner is "in custody pursuant to the judgment of a State court" and alleging that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)[4]; Maleng v. Cook, 490 U.S. 488, 490-91 (1989). Assuming the custody requirement is satisfied, habeas petitioners may challenge "the validity of the fact or length of their confinement." Preiser v. Rodriguez, 411 U.S. 475, 490 (1973). Under this reasoning, a prisoner may challenge a prison disciplinary conviction by way of a habeas petition if the conviction resulted in the loss of good time credits because credits impact the duration of the prisoner's confinement. Id. at 487-88 (finding that a suit seeking restoration of prisoners' good time credits was "within the core of habeas corpus in attacking the very duration of their physical confinement itself" and noting in dicta that this would be true even if restoration of the credits would not result in the prisoners' immediate release from prison).

Where a favorable resolution of the prisoner's claim will not have such a direct impact on the duration of the prisoner's confinement, the line between habeas and § 1983 jurisdiction is not as clear and has been the subject of evolving Supreme Court and Ninth Circuit precedent. In Preiser, the Court held that an action seeking the restoration of good time credits fell "within the core of habeas corpus" and, thus, could not be brought as a § 1983 action. Preiser, 411 U.S.

---

[3] For purposes of this citation only, the Court uses the page number affixed to the top of the page by the Court's electronic filing system because Petitioner did not paginate his exhibits.

[4] Respondent does not dispute that the "in custody" requirement is satisfied and it appears § 2254's language has been construed to apply to the actual physical custody, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), as opposed to some additional level of restraint imposed as a result of a disciplinary conviction, see Wilson v. Terhune, 319 F.3d 477, 481 (9th Cir. 2003) (assuming without addressing that "in custody" requirement met where petitioner challenged disciplinary conviction in habeas petition filed after all disciplinary punishment had been withdrawn or completed).

at 487-88. The Court went on to explain that a § 1983 action would be the proper route for a prisoner challenging prison conditions, but expressly cautioned courts relying on its ruling that "[t]his is not to say that habeas corpus may not also be available to challenge such prison conditions." Id. at 499. Because the only issue before the Court was "the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus," the Court concluded that it "need not explore the appropriate limits of habeas corpus..." Id. at 500.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Court further addressed the "core" of habeas corpus in a § 1983 action challenging revocation of good time credits via a disciplinary proceeding that was alleged to be constitutionally deficient. The Court held that to the extent the prisoners sought an injunction restoring their credits, the § 1983 action was foreclosed by Preiser. Id. at 555. However, the Court concluded that the prisoners could proceed with their damages claim under § 1983 and seek a declaratory judgment ("as a predicate to a damages award") that the disciplinary procedures were invalid and an "injunction enjoining the prospective enforcement of invalid prison regulations." Id.

The Supreme Court's efforts to harmonize the habeas and 1983 statutes continued in Heck v. Humphrey, 512 U.S. 477 (1994), another case brought under § 1983, where the Court held that if a prisoner's success in his § 1983 action "would necessarily imply the invalidity of his conviction or sentence," the damages action "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487; Osborne v. Dist. Att'y Office for the Third Judicial Dist., 423 F.3d 1050, 1053 (9th Cir. 2005), rev'd and remanded on other grounds by Dist. Att'y Office for the Third Judicial Dist. v. Osborne, 129 S.Ct. 2308 (2009), (noting that holding of Heck "has become known as the 'favorable termination' requirement"). Unlike in Preiser, the inmate in Heck did not seek injunctive relief or release from custody. Heck, 512 U.S. at 479; Docken v. Chase, 393 F.3d 1024, 1027 (9th Cir. 2004). In Edwards v. Balisok, 520 U.S. 641, 648 (1997), the Court applied the favorable termination rule to a prison disciplinary conviction and found that the inmate's claim for declaratory relief and money damages was not cognizable under § 1983 (citing Heck). But, the Court noted that an inmate ordinarily could proceed with a claim for prospective injunctive relief

(such as an order correcting a prison procedure) because such a claim would not "necessarily imply" the invalidity of a previous credit loss. Id. at 648-49 (declining to decide equitable claim because issue had not been briefed or considered by lower courts).

Most recently, the Court addressed the interplay of these two statutes in yet another § 1983 case, this time where two prisoners sought declaratory and injunctive relief preventing the retroactive application of stricter parole regulations. Wilkinson v. Dotson, 544 U.S. 74, 76-77 (2005). After reviewing the same Supreme Court precedent discussed *supra*, the Court held that "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82.

The Ninth Circuit has attempted to construe and clarify this Supreme Court precedent as it was evolving. Expanding on Preiser, the Ninth Circuit found that "[h]abeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989). However, the court subsequently reinforced that it must be "likely" that granting relief will reduce the duration of the sentence, stating "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition *will not necessarily* shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) (emphasis added). But, like many of the Supreme Court cases, Ramirez arose in the context of a § 1983 case and, therefore, the only question before the court was whether the claim was cognizable under § 1983 (i.e. not the limits of habeas jurisdiction).

As the Ninth Circuit subsequently explained in the context of addressing a habeas petition:

> the question of the relationship between habeas and § 1983 relief has only explicitly come up before in converse form: whether claims are *not* cognizable under § 1983 because their resolution will necessarily impact the fact and duration of confinement. In the only instance where the Supreme Court addressed whether habeas and § 1983 are necessarily mutually exclusive, the suggestion was that they are not. *See Preiser,* 411 U.S. at 499, 93 S.Ct. 1827; *id.* at 503-04, 93 S.Ct. 1827 (Brennan, J., dissenting). We agree.

Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004). In Docken, the prisoner was denied parole and, instead of setting the next parole hearing for one year later as he expected, the parole board set it for five years later. Id. at 1025-26. Docken argued that this change violated the Ex Post Facto Clause. Id. at 1026. The district court dismissed Docken's claim as not cognizable on habeas review. Id. at 1025. On appeal, the Ninth Circuit concluded that habeas jurisdiction was not foreclosed because it was "certainly at least possible that Docken's suit would impact the duration of his confinement," though the court acknowledged that it was by no means a certainty. Id. Moreover, the court construed "*Bostic's* use of the term 'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the *Preiser* Court," and concluded that Docken's request for annual parole review was "even more related to the duration of his confinement than eligibility for parole in the abstract [as discussed in Bostic]." Id. For this reason, the Ninth Circuit held that "when prison inmates seek only equitable relief in challenging aspects of their parole review that, so long as they prevail, *could* potentially affect the duration of their confinement, such relief is available under the federal habeas statute." Id.

The Court finds the facts of the instant case most analogous to those presented in Docken. Petitioner is proceeding under the habeas statute and seeking only equitable relief. He challenges both the underlying finding of misconduct and the disciplinary conviction that resulted. The relief Petitioner seeks (reversal of the guilty conviction, dismissal of the charges, and expungement of the RVR from his prison record) could potentially impact the duration of his confinement since the fact that a prisoner engaged in serious misconduct while imprisoned may be factored in when the parole board is considering whether or not to grant parole. See Cal. Code Regs. tit. 15, § 2402(c)(6) (2001) (listing the fact that "[t]he prisoner has engaged in serious misconduct in prison or jail" as a circumstance tending to indicate unsuitability for parole). Given that "serious misconduct" is a listed factor the parole board is directed to consider, these facts arguably are "even more related to the duration of his confinement" than those presented by Docken. See Docken, 393 F.3d at 1031. And, like the Docken court, this Court finds no Supreme Court precedent expressly foreclosing habeas relief in this case. While

the Supreme Court held in Dotson that a § 1983 action would be barred "*if* success in that action would necessarily demonstrate[s] the invalidity of confinement or its duration," Dotson, 544 U.S. at 81-82, it did not mandate the converse—that a habeas action is barred unless success "necessarily demonstrate the invalidity of confinement or its duration." Therefore, this Court finds Petitioner's claim appropriate for consideration on habeas review.[5]

**B. The FAP is Moot**

That being said, it appears Petitioner's FAP is moot. Article III, § 2 of the Constitution requires the existence of a case or controversy throughout all stages of federal judicial proceedings, including habeas proceedings. This means that the prisoner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision" and the prisoner must maintain "a 'personal stake in the outcome' of the lawsuit" during the entire course of the litigation. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations omitted). When "a case or controversy" no longer exists, the case become moot. Spencer v. Kemna, 523 U.S. 1, 7 (1998). Because Petitioner no longer suffers from a good time credit deficit—the only "actual injury" resulting from his conviction—Petitioner's case is moot absent a showing that he continues to suffer collateral consequences of his disciplinary conviction.

When a prisoner is challenging the validity of his underlying criminal conviction, the case-or-controversy requirement is always satisfied "because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." Id. Even after the sentence has expired, the lawsuit may be maintained if "some concrete and continuing injury," often referred to as a "collateral consequence" of the conviction, remains. Id. But, while the Supreme Court has been

---

[5] This view is reinforced by the Court's concern that, if the District Judge dismisses the FAP and requires Petitioner to bring his claim under § 1983, the next reviewing court will find it barred by the favorable termination rule of Heck and Balisok. Petitioner seeks reversal of his guilty conviction, dismissal of the charges and expungement of the RVR from his prison record. An order granting this relief necessarily would imply the invalidity of Petitioner's disciplinary conviction and, thus, the complaint brought pursuant to § 1983 would have to be dismissed. Heck, 512 U.S. at 487. This Court does not believe the Supreme Court intended to leave prisoners such as Petitioner in a jurisdictional no man's land where they are barred from bringing their claims under either statute.

willing to presume that a wrongful criminal conviction has continuing collateral consequences, see Spencer, 523 U.S. at 8, this presumption does not extend to prison disciplinary proceedings, Wilson, 319 F.3d at 481. The Ninth Circuit explains the rationale for not extending the presumption of collateral consequences as follows:

> The Supreme Court has distinguished between "substantial civil penalties" that result from a criminal conviction, such as the inability to engage in certain businesses, to serve as an official of a labor union, to vote in state elections, and to serve as a juror, and "non-statutory consequences" that "result from a finding that an individual has violated parole," such as the effect on employment prospects or the sentence imposed in future criminal proceedings. Lane v. Williams, 455 U.S. 624, 632, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); see also Spencer, 523 U.S. at 12-13, 118 S.Ct. 978 (quoting Lane). The latter consequences are "discretionary decisions" that "are not governed by the mere presence or absence of a recorded violation," but "are more directly influenced by[ ] the underlying conduct that formed the basis for the parole violation." Lane, 455 U.S. at 632-33, 102 S.Ct. 1322.

Wilson, 319 F.3d at 480. Applying this logic, the Wilson court found the possibility that Wilson's disciplinary conviction could someday cause the parole board to delay or deny his parole was the "type of nonstatutory consequence dependent on discretionary decisions that is insufficient to apply the presumption of collateral consequences." Id. at 481.

In this case, because Petitioner is challenging only the prison disciplinary conviction, as opposed to his underlying criminal conviction, the presumption of collateral consequences does not apply. Id. Thus, Petitioner has the burden of proving collateral consequences exist. See id.; Newman v. Horel, 2008 WL 590509, at *2 (N.D. Cal. Feb. 29, 2008). Petitioner has failed to make any such argument.

Moreover, even if Petitioner had argued that the presence of the disciplinary conviction in his prison record constituted a collateral consequence because it could impact his eligibility for parole, this argument would fail. In Spencer, the Supreme Court rejected the prisoner's argument that his parole revocation was a collateral consequence because it could negatively impact him during future parole proceedings. Spencer, 523 U.S. at 14. Noting that the parole board had almost unlimited discretion in determining whether or not to grant parole, the Supreme Court reasoned that it was "a possibility rather than a certainty or even a probability," and thus not sufficient to satisfy Article III's "injury-in-fact" requirement. Id. The same is true

here. As the Wilson court explained, the decision of whether or when to grant parole also is discretionary in California. See Wilson, 319 F.3d at 481 (citing Cal. Code Regs. tit. 15, § 2402). Thus, the California parole board would have complete discretion in determining whether, and to what extent, to consider Petitioner's rules violation and the resulting disciplinary conviction in making a parole determination. This makes it no more than a possibility that the conviction would impact Petitioner's parole eligibility, thereby rendering this potential consequence too speculative to satisfy Article III's "injury in fact" requirement.[6] See Spencer, 523 U.S. at 14; Gayles v. Sisto, 2010 WL 231382, at *2-*3 (E.D. Cal. Jan. 13, 2010) (concluding that the possible consideration of the disciplinary finding and the conduct underlying it during future parole proceedings was "too speculative to be considered a collateral consequence" and, therefore, recommending that the habeas petition be dismissed as moot); see also Newman, 2008 WL 590509, at *2 (dismissing habeas petition challenging disciplinary conviction where credits restored and prisoner failed to prove existence of collateral consequences). Accordingly, the Court finds that no collateral consequences exist and, therefore, **RECOMMENDS** that this case

---

[6] Though Petitioner did not oppose Respondent's motion to dismiss or otherwise satisfy his burden of proving that collateral consequences exist, the Court will address briefly any potential argument that the FAP is not moot because the Wilson case is distinguishable on the facts from the instant case. In Wilson, the prisoner attempted to rely upon Robbins v. Christianson, 904 F.2d 492, 496 (9th Cir. 1990), where the court found the case was not mooted by the inmate's unconditional release from custody because his disciplinary conviction for drug use was a sufficient collateral consequence. See Wilson, 319 F.3d at 481. The Wilson court distinguished this case on the grounds that the Robbins petitioner challenged the underlying finding of misconduct (the drug use), whereas Wilson did not dispute that he escaped (the underlying misconduct); he only sought to have the disciplinary conviction removed from his record. Id. at 482. Given that Petitioner argues that he did not refuse to obey a direct order (i.e. he challenges the underlying finding of misconduct), it would appear upon first blush that Petitioner's case is more analogous to Robbins than Wilson, and thus, not moot. However, there are two problems with that conclusion. First, in Spencer, the Supreme Court did not expressly address the distinction between a challenge to the misconduct and a challenge to the disciplinary conviction in rejecting the argument that a negative impact on future parole proceedings constitutes a collateral consequence and, thus, it appears Spencer abrogated Robbins. See Spencer, 523 U.S. at 14. Second, even if Robbins remains good law, this Court finds the case distinguishable from the instant facts for a different reason. The Robbins court found it significant that the petitioner's conviction was for drug use because society's view on drugs made it a very real possibility that the petitioner's prior use of drugs could impact his employment options. Robbins, 904 F.2d at 496. For that reason, the court found "the possibility of future harm to Robbins is not too ephemeral to constitute a collateral consequence for mootness purposes." Id. The court expressly noted, however, that the "possibility of discrimination arising out of prison discipline would seem very speculative had Robbins been disciplined for some conduct other than drug use." Id. (citing insolence, speaking out of turn, and committing "one of the other infractions that occur every day" as examples of conduct that would not suffice for mootness purposes). This Court finds that Petitioner's underlying misconduct of refusing to obey a direct order falls squarely within the category of "infractions that occur every day," which are not likely to evoke the sort of knee-jerk response that the Robbins court equated with drug use. The Court, therefore, finds that Petitioner has not alleged sufficient collateral consequences to prevent a finding of mootness.

be **DISMISSED AS MOOT**.

**C. Violations of State Law Are Not Cognizable on Federal Habeas Review**

To the extent Petitioner claims that CDCR's action violated Article I, §§ 17 & 24 of the California Constitution and California Code of Regulations, tit. 15, §3271 and that the state court orders upholding his disciplinary conviction were in error, see Pet'r Mem. at 6, 9 & 13, Respondent submits that the FAP fails to allege a cognizable federal claim, see Mot. to Dismiss at 4-5. Respondent is correct that federal habeas corpus relief generally is not available for alleged state law violations. See 28 U.S.C. § 2254(a). As the Supreme Court repeatedly has emphasized, "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (quoting Lewis for same holding). Federal habeas review of a state court's application of state law is limited to determining whether "the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." Jeffers, 497 U.S. at 780. However, this Court need not reach the issue of whether Petitioner's claims under state law implicate his rights under the Eighth or Fourteenth Amendments because these claims also are moot for the reasons discussed above. The Court, therefore, **RECOMMENDS** that these claims be **DISMISSED AS MOOT** as well.

**CONCLUSION AND RECOMMENDATION**

Because the Court finds the FAP must be dismissed as moot, the Court need not address Petitioner's Eighth and Fourteenth Amendment claims on the merits.[7] Should the District Judge find that the case is not moot, this Court recommends that the District Judge order Respondent to file an answer addressing the merits of Petitioners claims.

**IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that judgment be entered denying the petition.

///

---

[7] The Court further notes that Respondent did not address these claims on the merits in his motion to dismiss.

**IT IS ORDERED** that no later than **August 5, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later that **August 26, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: July 15, 2010

BARBARA L. MAJOR
United States Magistrate Judge